IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYAN WITBECK,** | : | Civil No. 1:17-cv-498 |
| **Plaintiff,** | : | |
| v. | : | |
| **EQUIPMENT TRANSPORT, LLC,** | : | |
| **Defendant.** | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Before the court is Defendant's Motion for Summary Judgment. (Doc. 35.) For the reasons outlined below, the court shall deny the motion.

## I. BACKGROUND[1]

In October 2011, Defendant Equipment Transport, LLC ("Defendant" or "ETL") hired Plaintiff Bryan Witbeck ("Plaintiff" or "Mr. Witbeck") as a truck driver. Upon being hired, Mr. Witbeck accepted by signature Defendant's Employee Handbook, which stated, *inter alia*, that an employee must exhaust sick and vacation leave before beginning to take unpaid FMLA leave. Between 2011 and 2016, Mr. Witbeck held several positions with ETL, including driver, truck pusher, truck

---

[1] The court relies upon the record before it—construed in the light most favorable to Plaintiff—including facts agreed upon by the parties. The court did not consider Defendant's "Response to Plaintiff's Counterstatement of Undisputed Facts," (Doc. 43) because such a document is not permitted under Local Rule 56.1; that rule only permits (and requires) the nonmovant to file a response to the movant's statement of material facts, lest those facts be treated as true. No similar admission can occur based on statements made by the non-movant in their statement of facts, so LR 56.1 authorizes no analogous document to be filed by the movant in accordance with their reply brief.

1

supervisor, parts manager, and field supervisor. In a few of his first employment reviews, Defendant mildly admonished Mr. Witbeck for failing to keep up with his paperwork.

In October 2013, Mr. Witbeck suffered a heart attack and took off a couple of days of work for treatment. When he consulted Defendant about potentially seeking more time off, as recommended by his doctor, Defendant said he could not have it.[2] Defendant did, however, give him paid time off to attend doctor's appointments.

In April 2014, Mr. Witbeck discovered that a driver had reached the maximum amount of driving time to comply with Department of Transportation regulations. To avoid facing a penalty, Mr. Witbeck offered the driver his login information to alter his driving time. Defendant discovered this and provided him with a written warning, threatening that "[t]his is a very serious matter and reoccurrence will result in termination."

In December 2015, Mr. Witbeck's doctor informed him that his heart condition had worsened and he needed surgery to install a pacemaker. Mr. Witbeck went to his supervisor, Ryan Sallee, and said he would need two weeks off for surgery and recovery. Mr. Sallee seemed frustrated with Mr. Witbeck taking time off, pressing him as to whether he really needed the two weeks off and lamenting

---

[2] Plaintiff's testimony on this matter is somewhat muddled. It appears Plaintiff was told he was not allowed to take any time off, but Defendant did permit him to work from home while receiving pay—he simply had to remain on call at all times.

his need to pay another person to perform Mr. Witbeck's duties while he was out. Nonetheless, Mr. Witbeck was permitted to take the time off. According to Plaintiff, "Defendant never spoke to Mr. Witbeck about FMLA." Defendant's HR director, Ryan Salazar, however, testified that she interpreted Plaintiff's request for time off related to his surgery as a request for FMLA leave.

On January 30, 2016, after his surgery, Mr. Witbeck returned to work. Upon his return, Mr. Sallee's demeanor towards Mr. Witbeck had changed. Before Mr. Witbeck's surgery, Mr. Sallee was friendly, jovial, and talkative with Mr. Witbeck. After his surgery, Sallee appeared to avoid talking with Mr. Witbeck at all.[3]

On February 22, 2016, an accident occurred in the facility where Mr. Witbeck was working. Mr. Witbeck took note of the accident, reported it to Defendant's safety department, and, in doing so, mistakenly presumed the wrong person had been driving. Upon reporting the matter to the safety department, company protocol shifted investigatory responsibility from Mr. Witbeck to the department. Nonethless, when Mr. Witbeck discovered he had incorrectly named the wrong driver, he corrected his misstatement.

The next day, Sallee called Mr. Witbeck into his office and terminated him. He stated that "when an accident happens, it needs to be investigated and with that

---

[3] Plaintiff testified another man named Derrell Hardison acted similarly to Mr. Sallee. Mr. Hardison testified that he was unable to recall his exact position with Defendant.

being said, we are terminating you." It was a brief encounter, and Defendant had already hired and trained a man to replace Mr. Witbeck, so Mr. Witbeck left the facility.

On March 22, 2017, Plaintiff filed suit against Defendant alleging three causes of action: (1) violation of the Americans with Disabilities Act ("ADA"); (2) violation of the Family and Medical Leave Act ("FMLA"); and (3) violation of the Pennsylvania Human Relations Act. (Doc. 1.) Plaintiff alleged that Defendant fired him in retaliation for him having a disability and seeking FMLA leave. On May 19, 2017, Defendant filed a 12(b)(6) motion to dismiss. (Doc. 7.) The court granted the motion in part, dismissing Plaintiff's FMLA interference claim because Plaintiff failed to allege Defendant prevented Plaintiff from exercising any of his FMLA rights.[4] On September 3, 2019, Defendant moved for summary judgment. (Doc. 35.) Plaintiff has responded (Doc. 41), and Defendant filed a reply brief (Doc. 42). As such, the motion is now ripe for resolution.

---

[4] In Plaintiff's briefing opposing Defendant's motion for summary judgment, Plaintiff introduces several facts, and makes several arguments, implying there is evidence showing interference with Plaintiff's FMLA rights, but Plaintiff did not amend his complaint to add additional facts to remedy dismissal of his FMLA interference claim. As such, that claim is barred and may not be introduced at trial. Only Plaintiff's FMLA retaliation claim, alongside his ADA claim, will be considered. *See El Sereno, LLC v. City of Garland*, No. 3:09-CV-0556, 2010 WL 1741334, at *1 n.5 (N.D. Tex. Apr. 29, 2010) (declining to permit plaintiff to survive summary judgment "based on claims that had not been asserted as of the time the motion was filed"); *Holmes Group, Inc. v. RPS Products, Inc.*, 424 F. Supp. 2d 271, 295-96 (D. Mass. 2006).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable fact finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers

5

to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III. DISCUSSION

Plaintiff has three causes of action at issue here: (1) an ADA claim, based on the idea that Defendant fired him for requesting time off related to a disability; (2) an FMLA retaliation claim, alleging Defendant fired him for seeking FMLA leave; and (3) a PHRA claim, which—as the parties agree—requires proof of the same elements as an ADA claim. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). Defendant has, for the purpose of summary judgment, stipulated to all elements other than scienter, narrowing its motion to the argument that Plaintiff has insufficient evidence to make a prima facie showing of discriminatory intent or to show that Defendant's official reason for firing him was pretextual.

All three claims are subject to the *McDonnell Douglas* burden-shifting framework, requiring a three-step inquiry: (1) Plaintiff must show Defendant terminated him for a discriminatory reason; (2) Defendant must put forward a nondiscriminatory reason for having terminated him; then (3) the burden shifts back to Plaintiff to show Defendant's explanation for why it terminated him is mere pretext for its true discriminatory motive. *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (holding ADA claims are subject to the *McDonnell Douglas* test);[5] *Lichtenstein v. Univ. of Pitt. Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (using the *McDonnell Douglas* framework in analyzing an FMLA retaliation claim); *Kelly*, 94 F.3d at 105.

Applying this here, Plaintiff must show that he was fired: (1) for requesting a reasonable accommodation for his disability in the form of time off; or (2) for exercising, or attempting to exercise, his FMLA rights. *See Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 702 (E.D. Pa. 2015) (holding that, under the ADA, "[r]equesting an accommodation is a protected activity") (citing *Shellenberger v.*

---

[5] The Third Circuit recently held that certain ADA claims are not subject to the *McDonnell Douglas* framework. *See Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 179 (3d Cir. 2019). That case is distinguishable, however, because it concerned a Title III ADA claim—the provision of the ADA governing businesses' obligations to provide reasonable accommodations to the public. The *Matheis* court held that a Title III ADA plaintiff need not prove intent, rendering *McDonnell Douglas* inapposite. In contrast, *Shaner* held that a Title I ADA plaintiff—the portion of the ADA concerning employment discrimination—must prove intent, rendering the *McDonnell Douglas* framework applicable. Because Plaintiff's ADA claim is an employment discrimination claim, it falls under Title I of the ADA, rendering *Shaner* and, by extension, *McDonnell Douglas* controlling.

*Summit Bancorp., Inc.*, 318 F.3d 183, 191 (3d Cir. 2003); *Sulima v. Tobyhanna Army Depot.*, 602 F.3d 177, 188 (3d Cir. 2010)); *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) ("FMLA regulations . . . prohibit an employer from . . . 'retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights.'") (quoting 29 C.F.R. § 825.220(c)). The court addresses each in turn.

Beginning with Plaintiff's ADA claim, the record shows that a reasonable factfinder could conclude that Defendant fired Plaintiff for taking time off to seek medical care for his ailing heart condition. The record reveals two separate times Plaintiff sought leave for medical treatment related to his heart condition, both of which prompted hostile and unwelcoming reactions by Defendant. Plaintiff also testified that his supervisor, Mr. Sallee, was playful and friendly with him before surgery, but, after his time off, was cold and distant. Construing these facts in favor of Plaintiff, the gravamen of Defendant's unfriendly reactions was a concern that Plaintiff was going to cost the company money by continuing to require additional time off due to his heart condition. These facts—combined with the temporal proximity of one month between Plaintiff seeking leave to treat his condition and his being terminated—constitute sufficient circumstantial evidence from which a reasonable juror could find retaliatory intent. *See, e.g., Yeager v. UMPC Horizon*, 698 F. Supp. 2d 523, 548 (W.D. Pa. 2010) (denying summary judgment on intent

because a one-month gap was sufficient temporal proximity to give rise to an inference of retaliatory intent); *Carlson v. Twp. Of Lower Alloways Creek*, No. 06-cv-3779, 2009 WL 2496523, at *9 (D.N.J. Aug. 12, 2009) (same).

Turning to Plaintiff's FMLA claim, despite some weaknesses in Plaintiff's claim, the record compels the court to permit it to go forward. There are two core problems with Plaintiff's FMLA claim. First, he explicitly stipulates that he never discussed FMLA leave with Defendant. (Doc. 41-1, ¶ 47 ("Defendant ***never spoke*** to Mr. Witbeck about FMLA.") (emphasis supplied)). Second, it is difficult to understand how Sallee—the man Plaintiff requested leave through—would have interpreted his time off as FMLA leave, considering: (1) the Employee Handbook obligated Plaintiff to take paid vacation and sick leave before requesting unpaid FMLA leave; and (2) the record is devoid of evidence showing Plaintiff had already exhausted that leave before requesting this time off. Nonetheless, the head of Defendant's HR department explicitly testified that Mr. Witbeck also spoke with her and she interpreted his request for time off as FMLA leave. *See Lichtenstein*, 691 F.3d at 301 ("To prevail on a retaliation claim under the FMLA, the plaintiff must prove . . . the adverse action was causally related to her invocation of rights."). Thus, despite the circumstantial evidence being weak, it is clear this testimony is sufficient to show Defendant interpreted Plaintiff's request as an invocation of his FMLA rights. Combined with the fact that there is strong evidence showing

Defendant potentially retaliated against Plaintiff for taking time off, Plaintiff's FMLA claim must survive.

While Plaintiff has made a prima facie showing of discrimination, Defendant has also put forward a nondiscriminatory reason for firing Mr. Witbeck. Specifically, Defendant argues Mr. Witbeck had a history of dishonesty and misfiling paperwork, rendering his falsification of an accident report the final straw. As such, Plaintiff must therefore also show that Defendant's argument that he was fired for misreporting an accident is pretext. Having closely examined the record, there are multiple reasons the court finds this explanation as to why Plaintiff was fired not credible.

First, Defendant's explanation for why it fired Plaintiff morphed after butting up against a fundamental problem. Defendant first informed Plaintiff it was firing him for failing to investigate the accident at issue. But members of the safety department testified that Plaintiff complied with all protocol by simply reporting the occurrence of the accident to the department—it is the department's responsibility to actually conduct the investigation. Defendant's explanation then became a more morally problematic accusation that Plaintiff intentionally falsified his accident report, despite a dearth of evidence that Plaintiff had any reason to falsely accuse the wrong driver of causing the accident. Based on this evidence, a reasonable factfinder could conclude Defendant's moving goalposts evidence an attempt to manufacture

10

a justification for firing Plaintiff in an effort to obscure its true motive.[6] *See Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 284 (3d Cir. 2001) ("If a plaintiff demonstrates that the reasons given for her termination did not remain consistent . . . this may be viewed as evidence tending to show pretext, though of course it should be considered in light of the entire record.") (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

Second, there is deposition testimony suggesting verbal and written warnings are the overwhelming norm for dealing with disciplinary issues in Defendant's business operations, not termination. In fact, at least one witness was unable to recall any other employee of Defendant's being terminated for any cause other than a layoff. Nonetheless, Defendant appears to have circumvented protocol and practice by immediately firing Plaintiff for the misstatement in his report. While Defendant argues there is an exception in its policy permitting the immediate termination of an employee for committing a serious offense, Plaintiff testified that it was a simple error on his part and that he quickly corrected it, suggesting it was a minor error that did not evidence any intentional wrongdoing on Plaintiff's part. Thus, at worst, Defendant's deviation from its policy evidences discriminatory treatment of Plaintiff, while, at best, there is a fact issue as to whether his offense was severe

---

[6] This fact is compounded by Plaintiff's difficulty locating a witness working for Defendant who was willing to admit they were responsible for deciding to terminate Plaintiff.

11

enough to warrant immediate termination.[7] *See, e.g., Kurten v. Hanger Prosthetic and, Orthotics, Inc.*, 402 F. Supp. 2d 572, 580, 588 (W.D. Pa. 2005) (finding a fact issue of pretext where "Plaintiff alleges that . . . [t]he reasons given for Plaintiff's discharge were a mere pretext for unlawful discrimination in that other non-disabled employees were not discharged, but only received 'verbal warnings'").

Fourth, Plaintiff has put forward evidence that Defendant hired his replacement before the accident at issue occurred, suggesting Defendant planned to fire Plaintiff before it had a non-discriminatory justification for doing so. Thus, it is for a jury to decide whether the accident was an excuse for Defendant to execute a plan to terminate Plaintiff because he was taking too much time off.[8] These facts, in addition to the other facts making up Plaintiff's prima facie case, are sufficient to create a fact issue as to whether Defendant terminated Plaintiff because his heart

---

[7] Defendant argues its perception of Plaintiff as being dishonest and mismanaging paperwork was part of a history of wrongdoing on Plaintiff's part, suggesting it was a valid inference for Defendant to make from the evidence. This could constitute a viable defense. But deposition testimony suggests multiple witnesses were not aware of any other factor that Defendant considered in terminating Plaintiff other than his incorrect accident report. These witnesses, however, did not go so far as to actually testify that no other factors were considered. Thus, based on the record, the court cannot say whether Defendant did or did not consider Plaintiff's previous employment discipline in deciding to terminate him—this is a fact issue that need be resolved by the jury.

[8] Defendant points out that it knew about Plaintiff's heart condition for years, so if it intended to discriminate against him, it would have done so before. But a reasonable factfinder could conclude that, even if Defendant did not simply discriminate against Plaintiff on the basis of his disability, it terminated him to avoid having to grant him a reasonable accommodation in the form of time off.

disease required reasonable accommodations in the form of time off for treatment, leaving Defendant's proposed reason for terminating him a convenient pretext.

## IV. CONCLUSION

For the reasons outlined above, the court shall deny the motion for summary judgment. An appropriate order shall follow.

<u>*/s/ Sylvia H. Rambo*</u>
SYLVIA H. RAMBO
United States District Judge

Dated: March 18, 2020